UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANGELA H.,

                                                              DECISION AND ORDER

                        Plaintiff,

                                                              20-CV-6683L

          v.

KILOLO KIJAKAZI,
Commissioner of Social Security,

                        Defendant.
_____

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). This action is brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On December 13, 2016, plaintiff, then fifty-two years old, filed applications for a period of disability and disability insurance benefits, and for supplemental security income, alleging disability as of March 3, 2016. (Administrative Transcript, Dkt. #10 at 15). Her applications were initially denied. Plaintiff requested a hearing, which was held June 13, 2019 before Administrative Law Judge ("ALJ") William T. Ross. The ALJ issued an unfavorable decision on July 30, 2019. (Dkt. #10 at 15-29). That decision became the final decision of the Commissioner when the Appeals Council denied review on July 15, 2020. (Dkt. #10 at 1-3). Plaintiff now appeals.

The plaintiff has moved for remand of the matter for further proceedings (Dkt. #12), and the Commissioner has cross moved (Dkt. #13) for judgment on the pleadings, pursuant to Fed. R.

Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records throughout the relevant period, including treatment records reflecting obesity, left hip osteoarthritis and labral derangement, degenerative disc disease of the lumbar spine status post lumbar spine surgery, bilateral shoulder calcific tendinitis, asthma, and chronic obstructive pulmonary disease. The ALJ concluded that these conditions together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #10 at 17).

Applying the special technique for mental impairments, the ALJ found that plaintiff has no more than mild limitations in understanding, remembering, and applying information; no more than mild limitations in interacting with others; no more than mild limitations in concentration, persistence, and pace; and no more than mild limitations in adapting and managing herself. (Dkt. #11 at 20). The ALJ therefore found plaintiff's mental impairments non-disabling.

Upon review of the record, the ALJ found that plaintiff has the residual functional capacity ("RFC") to perform light work, with the ability to lift and carry 20 pounds occasionally and 10 pounds frequently, as well as sit for up to 6 hours and stand or walk for up to four hours in an

8-hour workday. She can push and pull no more than occasionally with her bilateral upper and lower extremities, and no more than occasionally reach overhead with her bilateral upper extremities. She can no more than occasionally kneel, stoop, balance, crouch, crawl, and climb stairs and ramps. She must avoid climbing ladders, ropes, or scaffolds. Finally, she must avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, fumes, odors, dust, gases, poor ventilation, unprotected heights, and dangerous machinery. (Dkt. #10 at 22).

At the hearing, vocational expert Amy Vercillo testified that a hypothetical individual with this RFC could perform plaintiff's past relevant work as an assembler and dispatcher, as well as perform the additional representative light exertion positions of small product packer sorter, bench inspector, and tagger labeler. (Dkt. #10 at 27-28). The ALJ accordingly found plaintiff not disabled.

## I. Medical Opinion by Dr. Capicotto

In assessing plaintiff's impairments, the ALJ's decision specifically discussed and weighed several medical opinions of record by treating, consulting, and reviewing physicians concerning plaintiff's mental and physical RFC. On balance, the ALJ rejected the opinions of all of plaintiff's treating and examining sources with respect to her physical RFC, and afforded the greatest weight to the opinion of a non-examining stage agency reviewer.

Initially, plaintiff argues that the ALJ committed reversible error by overlooking an opinion by plaintiff's treating orthopedic surgeon, Dr. Peter Capicotto. (Dkt. #10 at 673-76).

The Court agrees. The SSA's regulations require an ALJ to "evaluate every medical opinion [he or she] receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), *aff'd,* 141 F.3d 1152 (2d Cir. 1998); 20 C.F.R. §§ 404.1527(c), 416.927(c). "Although the failure to explicitly assign weight to an opinion may be harmless in some scenarios,

3

such as where the ALJ's decision reflects that the opinion was considered or where the limitations assessed in the opinion were ultimately accounted for in the RFC . . . those circumstances are not present here." *Garrett W. v. Commissioner*, 2021 U.S. Dist. LEXIS 41003 at *11-*12 (W.D.N.Y. 2021).

Dr. Capicotto completed an RFC assessment on March 8, 2017, based on a treatment history since January 18, 2017. Dr. Capicotto noted low back pain with muscle spasms and pain radiating into the legs, treated with medications and epidural injections. He indicated that plaintiff was unable to use public transportation. He estimated that plaintiff could sit, stand, walk, push/pull/bend, and lift/carry, for no more than 1-2 hours each in an 8-hour workday. (Dkt. #10 at 673-76). He further indicated that plaintiff's symptoms would render her unable to participate in any activities other than treatment for three months. (Dkt. #10 at 674).

The ALJ failed to mention or weigh this opinion in his decision, and it seems probable that he overlooked it entirely. The error is not harmless, because Dr. Capicotto's opinion contained limitations which manifestly conflicted with the ALJ's RFC determination. Dr. Capicotto was a treating surgeon whose opinion, under the guidelines applicable at the time plaintiff's application was filed, was potentially entitled to controlling weight. His opinion was largely consistent with the medical opinions of other treating and examining sources, as well as with contemporaneous imaging studies indicating, e.g., moderate-to-severe foraminal stenosis. (Dkt. #10 at 277-78). Because proper consideration of Dr. Capicotto's opinion had the potential to alter the outcome of the ultimate disability determination, remand is necessary in order to allow it to be addressed.

Although the Commissioner argues that the length of Dr. Capicotto's treatment history with plaintiff (consisting of two visits prior to his opinion) did not entitle him to the deference normally afforded to treating physicians, "[t]he Court declines to engage with this argument in

depth because it relies on the Commissioner's post hoc rationalizations." *Kevin B. v. Commissioner*, 2021 U.S. Dist. LEXIS 24853 at *7 (W.D.N.Y. 2021).

The Commissioner also argues that Dr. Capicotto's opinion may not satisfy the durational requirement, given that it opines that plaintiff's limitations will prevent her from engaging in any activities other than treatment and rehabilitation for only three months. However, the question to which Dr. Capicotto was responding related to the length of time that plaintiff's limitations would prevent her from engaging in any activities other than treatment: it did not address the broader question of how long each of the specific functional limitations described in the opinion were expected to last. *See generally Medina v. Commissioner*, 2019 U.S. Dist. LEXIS 42488 at *15 (W.D.N.Y. 2019). Indeed, contemporaneous and subsequent opinions by treating and examining sources – all rejected by the ALJ as inconsistent with the record as a whole – testified to similar limitations over the next twelve months and beyond. *See, e.g.,* Dkt. #10 at 558-67, 671-72, 662-65, 1799-1800.

Because the ALJ's failure to weigh Dr. Capicotto's opinion was not harmless, remand is required.

## II.     Medical Opinions by Nurse Practitioner Callan

Plaintiff also argues that the ALJ erred in summarily rejecting several RFC opinions by Nurse Practitioner Mary Callan, on the grounds that she was not an acceptable medical source, and that her opinions were, inter alia, "blanket statements of disability." (Dkt. #10 at 25).

This was error. Initially, Ms. Callan's opinions were not conclusory statements on the ultimate issue of disability: they provided specific, function-by-function assessments which were based on in-person examinations with objective findings, which were notably consistent in several respects with other medical opinion evidence by acceptable medical sources, including Dr.

Capicotto, and consulting internist Dr. Harbinder Toor. Furthermore, while Ms. Callan was not an acceptable medical source, the opinions of non-acceptable medical sources "are important and should be evaluated on key issues such as impairment severity and functional effects." *Medina*, 2019 U.S. Dist. LEXIS 42488 at *16 (quoting SSR-06-03P, 2006 SSR LEXIS 5 (2006)). Indeed, where, as here, a nurse practitioner has treated a claimant regularly and over a long period of time, their opinion may "properly be determined to outweigh the opinion from a medical source, including a treating source, [where the NP] has seen the individual more often and has greater knowledge of the individual's functioning over time and if the [NP's] opinion has better supporting evidence and is more consistent with the evidence as a whole." *Id*.

Because the ALJ's rejection of Ms. Callan's opinions was not sufficiently supported, remand is required.

Plaintiff offers additional arguments concerning the ALJ's errors in assessing medical opinions concerning plaintiff's exertional and nonexertional RFC. Because the Court finds that remand is necessary, to involve reconsideration of all of the medical opinions and evidence of record, the Court need not address these additional bases for remand.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to vacate the ALJ's decision and remand the matter (Dkt. #12) is granted, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #13) is denied.

The ALJ's decision is reversed and remanded, and the ALJ is instructed to render a new decision which considers all of the evidence of record, and redetermines plaintiff's claim. Such analysis should include assessment and weighing of Dr. Capicotto's opinion – recontacting Dr.

Capicotto if further clarification is deemed necessary – and reassessment of Nurse Practitioner Callan's opinions, with appropriate deference to the standards relevant to the weighing of medical opinions. The ALJ is further directed to reassess all of the other medical opinions of record, both exertional and non-exertional, given that due consideration of Dr. Capicotto's and Ms. Callan's opinions and the objective findings upon which they were based may shift the balance of the ALJ's reasoning with respect to those opinions he discredited as "inconsistent" with other evidence of record.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
July 22, 2022.